IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLES MCCLOUD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| and ) | |
| ) | |
| CITY OF PONCA CITY, ) | |
| ) | |
| Intervenor-Plaintiff. ) | Case No. CIV-08-433-D |
| ) | |
| vs. ) | |
| ) | |
| TEREX TELELECT, INC., *et al*., ) | |
| ) | |
| Defendants. ) | |

**O R D E R**

Before the Court is Defendants' Motion in Limine to Exclude the Expert Testimony of Kevin B. Sevart [Doc. No. 106].[1] Defendants Terex Telelect, Inc. and Terex Utilites challenge under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579 (1993), the opinions of Plaintiff's engineering expert, Mr. Sevart, regarding Plaintiff's claims of negligence, manufacturer's products liability, and breach of implied warranty. *See* Compl. [Doc. No. 1].[2] Plaintiff Charles McCloud has responded to the Motion, and no reply was filed.

---

[1] Defendants purport to include in their Motion a request for a hearing pursuant to Fed. R. Evid. 104. This request does not comply with the Court's local rules requiring each motion to be filed as a separate document. *See* W.D. Okla. LCvR7.1(c). Further, Defendants' brief contains no argument or authority regarding the request, even though such a motion would require a brief. *See id*. LCvR7.1(k). For these reasons, and because the parties' briefs are adequate, the Court declines to grant a hearing.

[2] The Complaint names three additional defendants – Terex Utilities South, Inc.; Terex Corporation; and Dakota Bodies, Inc. – that Plaintiff has voluntarily dismissed. *See* Notice of Dismissal [Doc. No. 19]; Stipulation of Dismissal [Doc. No. 99].

**Factual and Procedural Background**

Plaintiff seeks to recover damages for personal injuries he sustained on April 25, 2006, during his employment as a lineman for Plaintiff-Intervenor City of Ponca City. Plaintiff fell from a utility truck when he stepped onto a cable step on the rear of the truck and the step failed, allegedly due to Defendants' improper manufacture and installation of a proper cable step system. After the accident, the utility truck was repaired by replacing the broken step and welding a new step onto the rear of the truck. The broken step was discarded; only photographs of its condition were retained.

Plaintiff filed this action on April 24, 2008. His counsel first contacted Mr. Sevart regarding the case on April 22, 2009. Mr. Sevart is a mechanical engineer with a bachelor's degree from Kansas State University. He has been a licensed professional engineer since 1998. From 1990 to 2005, Mr. Sevart worked for Advance Technology, Inc., where he designed and tested protective structures for rollover accidents and falling objects. He has no prior experience with the manufacture or design of cable step systems and no certifications in welding.

Mr. Sevart investigated the accident and formulated his conclusions by reviewing photographs, deposition transcripts, drawings, and engineering standards. He considered photos of the utility truck involved in this case and other utility trucks. He inspected the truck only after he issued a report regarding his findings and opinions, and at the time of his inspection, he did not have access to any of the steps that were attached to the truck. He performed no physical tests but, by analytical analysis, ruled out other causes of the accident and concluded that the failure of the step was a result of an improper weld, which was incorrectly located. He also concluded that alternate step designs were available that would have reduced the risk of a similar failure.

**Admissibility of Expert Testimony**

Defendants challenge the admissibility of Mr. Sevart's expert opinions regarding the alleged defect in the cable step of the utility truck.[3] Defendants question Mr. Sevart's qualifications to render an opinion regarding cable steps and dispute the reliability and relevance of his opinions. Plaintiff has responded to Defendants' challenge, in part, by presenting an affidavit of Mr. Sevart further explaining the engineering methods employed in his analysis. Defendants have not objected to this supplementation of Mr. Sevart's initial opinion and report.

1.      **Standard of Decision**

Rule 702 codifies the Supreme Court's decision in *Daubert* and sets forth the standard for admissibility of expert opinion testimony. As part of a trial court's gatekeeping function, this Court must determine, first, whether the proposed expert is qualified to offer an opinion, and second, whether "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. Reliability under *Daubert* is determined by looking at "whether the reasoning or methodology underlying the testimony is scientifically valid," and relevance is determined by "whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93.

In assessing the reliability of expert testimony, there are several nonexclusive factors that the Court may consider, including (1) whether the expert's theory or technique can be and has been

---

[3] Defendants have filed separate motions seeking summary judgment on Plaintiff's claims. The admissibility of Plaintiff's evidence must be decided before the summary judgment issues because in assessing a Rule 56 motion "a court necessarily may consider only the evidence that would be available to the jury." *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006); *see Trevizo v. Adams*, 455 F.3d 1155, 1160 (10th Cir. 2006); *see also Thomas v. International Business Mach.*, 48 F.3d 478, 485 (10th Cir. 1995).

tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) the known or potential rate of error of the technique or theory, and (4) the general acceptance of the theory or technique. *Id.* at 592-94. These factors are not definitive, however, and the Court has broad discretion to consider other factors in determining reliability. *Id.* at 594-95; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). "Regardless of the specific factors at issue, the purpose of the Daubert inquiry is always 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222-23 (10th Cir. 2003) (quotation omitted). A party sponsoring expert testimony "need not prove that the expert is undisputably correct or that the expert's theory is generally accepted in the scientific community. Instead, the [party] must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Truck Ins. Exch. v. Magnetek, Inc.*, 360 F.3d 1206, 1210 (10th Cir. 2004) (internal quotations and citations omitted).

2. **Qualification**

In determining whether to admit expert testimony, the Court must determine as a threshold issue whether the expert is qualified "by knowledge, skill, experience, training, or education" to render an opinion regarding a fact in issue. *See* Fed. R. Evid. 702. The Court easily determines that Mr. Sevart is qualified to render an engineering opinion regarding the product safety issues presented in this case. The fact that Mr. Sevart has not previously analyzed the failure of a cable

4

step system on a utility truck does not disqualify him from applying his professional training and experience to the particular issues involved in this matter.

   3.   **Reliability**

Defendants assert that Mr. Sevart's opinions are unreliable because the theories advocated in this case have not been scientifically tested, have not been subjected to peer review or publication, are not generally accepted in the scientific community, were developed solely for the purpose of this case, and lack any principled methodology. Contrary to these arguments, Mr. Sevart stated in his expert report, testified in his deposition, and attests in his affidavit that he employed a recognized method of engineering analysis in reaching his conclusions. The Court finds Mr. Sevart's testimony and affidavit concerning his adherence to an accepted methodology to be sufficient. If believed, Mr. Sevart applied the same method of analysis used by other design engineers to evaluate the safety of equipment, and applied standards applicable to comparable machines. *See Alfred v. Caterpillar, Inc.*, 262 F.3d 1083, 1088 (10th Cir. 2001) (finding expert's engineering opinion was reliable because "it was the result of his having researched and applied standards promulgated by an internationally recognized organization of engineers" and reversing trial court's decision to exclude his testimony). Mr. Sevart has specifically stated that his engineering opinions are stated to a reasonable degree of engineering certainty. Defendants' criticisms go to the weight, rather than the admissibility, of Mr. Sevart's opinions. *See Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1236 & n.2 (10th Cir. 2004).

In short, the Court finds that Mr. Sevart's expert opinions concerning alleged defects in the manufacture and design of the cable step at issue are sufficiently reliable to be admissible.

### 4. Relevance

Defendants contend Mr. Sevart's opinions lack relevance because "his opinions are nothing more than speculation and are not supported by any objective data or research." *See* Defs.' Br. [Doc. No. 106-2] at 19. The Court finds, however, that under the circumstances of this case – where critical evidence was destroyed soon after the accident – Mr. Sevart understandably relied on photographs, witness testimony, and engineering principles in his analysis. Here, as in *Bitler*, 400 F.3d at 1238, Defendants' argument concerning the "fit" between an expert's opinion and the facts of the case "confuses a *Daubert* inquiry . . . with the jury question of which theory, plaintiffs' or defendants' best captures the truth of the matter at issue." This Court, like the court of appeals in *Bitler*, finds that "the expert testimony 'fits' because it involves a reliable method that would aid the jury in resolving a factual dispute." *Id*.

Therefore, because Mr. Sevart's engineering opinions are relevant to the issues in the case, the Court finds that Mr. Sevart's expert testimony should be admitted.

### Conclusion

For the above reasons, the Court finds that Plaintiff has sufficiently established the admissibility of Mr. Sevart's expert testimony regarding alleged defects in the utility truck's cable step system.

IT IS THEREFORE ORDERED that Defendants' Motion in Limine to Exclude the Expert Testimony of Kevin B. Sevart [Doc. No. 106] is DENIED.

IT IS SO ORDERED this 17th day of August, 2010.

TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE